IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE L. DEGEN, | No. C 15-02677 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

In this social security appeal, the Court finds that the ALJ's decision was supported by substantial evidence. Accordingly, to the extent stated below, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On May 1, 2012, plaintiff Leslie L. Degen filed concurrent applications for disability insurance benefits and supplemental security income, alleging he was unable to work since January 1, 1973 due to depression and chronic foot pain (AR 476). His application was denied both initially and upon reconsideration (AR 20). An administrative hearing was timely requested (*ibid.*).

On March 9, 2014 and on September 18, 2014 plaintiff had hearings before ALJ Richard P. Laverdure (AR 38–70). At the first of two hearings, Degen stipulated to an amended onset date of May 1, 2012 (the date of his application). The ALJ rendered a decision on December 9, 2014, finding that plaintiff was not disabled (AR 17–37). Plaintiff requested administrative review (AR 16). The Appeals Council denied the request (AR 1). Plaintiff filed an action before this Court on June 15, 2015, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, Degen testified that he quit his job working as a custodian at a university in 1998, where he had worked since 1986 and had "lifetime employment [and] good benefits." He then sold his house and "ended up with a large sum of money," but he eventually "ran out of money from paying rent, and [he] had cars, insurance, all that kind of stuff" (AR 41–42). After Degen ran out of money, he moved in with his uncle, bicycled, visited his half brother, played music, and performed mechanic work on his cars (AR 42). Degen stated he sought to relax due to the "tremendous strain" of holding down a job (*ibid.*). Degen eventually left his uncle's home and became homeless, at least as of 2012 (AR 52).

Degen testified that he suffered from "extremely excruciating" pain in his feet when he doesn't "treat [him]self properly." He saw a podiatrist who gave him orthodics that "immediately helped with the pain" and "reduced the pain by about one-third," thereby increasing the distance he could walk from two blocks to twelve. Degen testified that keeping away from alcohol and sugar dramatically helped with the pain (AR 50–51).

Degen also testified that he suffered from anxiety that could be triggered "[w]hen things are too loud, too bright, or they smell too strong, or taste too strong, or if somebody touches [him]" as well as by crowds and failure in maintaining his own health (AR 51).

2

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 20–37). This order will also briefly review both plaintiff's self-reported symptoms and the findings of each physician who examined and treated him.

#### A. Physical Conditions.

In Ocrober 2012, Dr. Rose Lewis, an internist, performed a comprehensive internal medical evaluation of Degen (AR 387–90). Examining Internist Lewis noted that Degen primarily complained of foot pain, which he stated began at age 12 and worsened over time (Degen is now 53). Degen reported he could only walk two or three blocks before he started feeling pain. Examining Internist Lewis reported that Degen took no pain medication, though lying down or soaking his feet in warm water could relieve the pain.

Examining Internist Lewis's report indicated that Degen could take care of his personal and household needs, although he reported that he was homeless. She indicated diagnoses of a "left bunion [and] multiple corns and calluses [on] both feet" but noted Degen "ambulate[d] quite easily without an assistive device, [sat] comfortably and [could] get on and off the exam table with ease. He ha[d] no difficulty taking off his shoes and putting them back on" (AR 387–88). Examining Internist Lewis otherwise found generally unremarkable results. She assessed Degen's maximum standing and walking capacity and his maximum sitting capacity at "up to six hours." She also assessed Degen's maximum lifting and carrying capacity at "100 pounds occasionally and 50 pounds frequently" (AR 390).

Physicians from the state disability determination agency, who reviewed the Degen's medical records in 2012 and 2013, found no evidence to support severe physical impairments (AR 80, 104).

Degen first sought treatment from a podiatrist, Dr. Ted Mihok, in January 2014. Podiatrist Mihok diagnosed Degen with acquired keratadoma, but he made no indication of any physical limitations (AR 479–80).

3

In April 2014, Degen also sought treatment from a neurologist, Dr. Joshua Kuluva, who conducted a neurologic exam and diagnosed him with hypersensitivity, neuropathy (possibly caused by chronic alcohol abuse), and essential tremor, though found Degen's physical conditions otherwise normal (AR 578–80).  Neurologist Kuluva prescribed Degen with Gabapentin, which he expected to help with the neuropathy and the tremor (AR 579).  In July 2014, Degen reported to his treating psychiatrist, Dr. Linda Frankel, that the Gabapentin had helped with his symptoms until he ran out of it (AR 568).

### B. Mental Conditions.

The record also addressed Degen's mental conditions.  In July 2013, for the first time since the '80s Degen sought treatment for his reported lifelong depression.  He saw Treating Psychiatrist Frankel, who diagnosed Degen with major depression, alcohol abuse, and personality disorder (AR 478).  Psychiatrist Frankel prescribed Zoloft, which she later noted led to improved mental status when he adhered to the prescription (AR 575–76).  In April 2014, Treating Psychiatrist Frankel noted Degen reported sensitivity to bright lights, strong smells, and temperature.

In February 2014, Treating Psychiatrist Frankel submitted a medical impairment questionnaire indicating that Degen suffered from severe mental impairment (AR 452–53)

Also in February 2014, Dr. Lesleigh Franklin, a psychologist, examined Degen and noted his hypersensitivity and anxiety and found diagnoses of major depressive disorder, severe and generalized anxiety disorder, alcohol use disorder in sustained remission, and borderline personality traits.  Examining Psychologist Franklin found Degen would have moderate difficulty with understanding and remembering instructions or concentrating and marked difficulty completing tasks at an adequate pace, interacting with the public or coworkers, and responding to authority (AR 515–24).

4

# ANALYSIS

## 1. LEGAL STANDARD.

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).

The use of the Medical-Vocation Guidelines, at step five is proper "where they *completely and accurately* represent a claimant's limitations" and the claimant can "perform the *full* range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original). Although "the fact that a non-exertional limitation is alleged does not

5

automatically preclude application of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1102.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

In his decision, the ALJ found at step one of the sequential evaluation process that Degen had not engaged in substantial gainful activity since his application and amended onset date of May 1, 2012 (AR 23). At step two, the ALJ determined that Degen had severe impairments of major depressive disorder, generalized anxiety disorder, borderline personality disorder, and alcohol use disorder. The ALJ found Degen had no severe physical medical disorders (*ibid.*). At step three, the ALJ found Degen did not have an impairment or combination of impairments that met or equaled one of the impairments listed in the regulations (AR 25). At step four, the ALJ found Degen's residual functional capacity allowed him to perform medium work — which involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds — as defined in Sections 404.1567(c) and 416.967(c) of Title 20 of the Code of Federal Regulations, and that he was limited to unskilled, simple, repetitive tasks that did not involve contact with the general public (AR 26). At step five, the ALJ found that Degen had no past relevant work and thus lacked any acquired or transferrable work skills. Nevertheless, considering Degen's age, education, work experience, and ability to perform medium work, and in light of the medical-vocational guidelines and the testimony of a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Degen could perform (AR 30).

By way of summary, the ALJ concluded (*ibid.*):

> Overall, it appear [sic] the claimant made a lifestyle choice in the late 1990s, quitting his job and selling his house. His funds ran out. His current financial and living situations are unfortunate, but they do not constitute a basis for a finding of disability. Overall, I find no legitimate basis in the current record to preclude the claimant from performing simple unskilled medium work in a nonpublic setting.

6

Degen now argues that the ALJ erred at step two in finding the record insufficient to support a severe physical impairment. He argues that the ALJ improperly rejected a portion of the opinion of Treating Psychiatrist Frankel and found that Degen's self-assessment of his symptoms was not entirely credible. These errors, Degen argues, resulted in an improper assessment of his residual functional capacity at step four.

At step two of the sequential evaluation process the ALJ considered whether Degen had a severe medically determinable physical or mental impairment or combination thereof. 20 C.F.R. 416.920(a)(4)(ii). In this context, an impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 416.920(c). The ALJ found the record generally lacked evidence from treating physicians for Degen's claimed physical impairments, so the ALJ accorded "primary probative weight to the comprehensive internal medicine consultative evaluation performed by Dr. Lewis," which found Degen's physical medical status to be "nonsevere" (AR 23–24). (The ALJ *did* find Degen suffered from severe *mental* impairments.) Degen contends the ALJ erred by failing to give primary weight to Degen's treating physicians, Drs. Mihok and Herb.

Notwithstanding the ALJ's determination that Degen lacked severe *physical* impairments, the ALJ proceeded along the sequential analysis based on Degen's severe *mental* impairments. At step four, the ALJ was required to evaluate Degen's residual capacity based not only on Degen's severe mental impairments, but *also* based on his nonsevere physical impairments. *See* 20 C.F.R. 416.923. Indeed, the ALJ did consider purported physical impairments at step four (AR 31). In other words, the determination that Degen did not suffer from a severe physical impairment did not prejudice Degen, inasmuch as Degen remained free to argue that his residual functional capacity precluded work due to both physical and mental impairments. The central question, then, is whether the ALJ properly considered the evidence in reaching his assessment of Degen's residual functional capacity at step four.

The ALJ concluded that Degen could perform medium work, ascribing probative weight to the opinion of Examining Internist Lewis (although Lewis opined he could perform heavy

7

1 work). Degen contends the ALJ erred in ascribing significant weight to Examining Internist

2 Lewis's opinion as to his physical limitations, but Degen points to no objective medical

3 evidence that contradicted that conclusion. Instead, Degen simply lists his several diagnoses

4 and then assigns error to the ALJ for finding his subjective assessment of his symptoms not

5 fully credible.

6 The ALJ found Degen was not fully credible as follows (AR 29):

> First, as indicated above, the claimant has not been consistent in following his treatment regimen. Second, his subjective allegations are significantly out of proportion to the objective medical findings of record. Third, although the claimant has alleged that his depression and "hypersensitivity" have existed for most of his life, he successfully performed years of work while apparently experiencing the same symptomatology. Fourth, although the claimant has alleged that his symptoms significantly restrict his ability to function on a day-to-day basis, he has admitted that until recently, he received no mental health or other care whatsoever "for decades." . . . Fifth, despite his claim of life-long problems, he said that during "good years" he played music, worked on cars, rode a bike, and visited his uncle and half-brother, although he tried not to expose himself to "too much stimulation." Finally, the claimant left a good custodial job in UC Santa Cruz. . . . Although he had been drinking for years, including a pint of vodka per day, he apparently had no difficulty successfully completing work activity on a consistent basis until he sold his home and quit work.

17 Accordingly, the ALJ concluded that Degen's "statements and testimony concerning the

18 intensity, persistence and limiting effects of [his] symptoms are not entirely credible," and so

19 the record did not establish impairments that would support a finding of disability. Degen

20 contends that constituted error.

21 The ALJ "may not discredit [a] claimant's testimony as to the severity of symptoms

22 merely because they are unsupported by objective medical evidence," rather, the ALJ's

23 "reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick v.*

24 *Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Each of the ALJ's bases for finding Degen not fully

25 credible is addressed in turn.

26 Degen contends that any failure to follow his treatment regimen or for failing to seek out

27 mental health treatment for more than two decades followed from his mental health issues, his

8

1   economic circumstances, and transportation challenges, but the ALJ specifically noted that
2   Degen very recently sought out healthcare on his own despite these alleged obstacles. Nor do
3   Degen's economic circumstances explain his sudden discontinuation of his treatment —
4   Degen's economic circumstances did not change abruptly.

5   Degen argues that the ALJ does not specify which of Degen's allegations of symptoms
6   fell out of proportion with the medical evidence. He cites Treating Psychiatrist Frankel's
7   observations of his mental state, indicating that he had some anxiety and depression, that his
8   judgment was poor and that he "expressed suicidal ideation" (though he "denie[d] any plan or
9   intent"). But Treating Psychiatrist Frankel's assessment of Degen's condition was always mild.
10  In fact, she only found his judgment was poor once and otherwise assessed it as fair. Degen
11  also cites the opinion of Dr. Frances Herb, his primary care physician, that he appeared
12  "depressed" with "poor hygiene" (AR 496). He cites the findings of an examining psychologist
13  that "his hands were tremulous . . . he had some trouble on formal measures of attention . . .
14  [and his] mood was dysphoric. He was anxious and irritable . . . [and became] overwhelmed
15  under pressure" (AR 518, 520). Finally, Degen points to the opinion of Treating Podiatrist
16  Mihok, who noted that Degen's foot pain was "painful to palpitation" (AR 480).

17  Far from countering the ALJ's finding's that Degen's self-reported severity of his
18  symptoms was disproportionate compared to the objective findings, the foregoing reports
19  *underscore* that finding. Indeed, the ALJ never disputed that Degen might have some
20  symptoms. Rather, he found that Degen's claimed severity was too extreme as compared to the
21  objective evidence to ascribe them full weight, particularly in light of the other infirmities
22  discussed herein (and in the ALJ's decision).

23  Degen contends that the ALJ's reference to his past ability to work despite his lifelong
24  hypersensitivity, and the fact that he was able to carry on daily activities such as shopping,
25  driving, biking, and exercising after leaving his previous job are not relevant to his current
26  claim of disability, but he cites no authority for that position. He contends that his condition
27  "could have worsened over time and with age" but neither the medical record nor Degen's own

9

assessment support that possibility. He also cites *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), for the proposition that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." True, but Degen's ability to carry on those activities nevertheless tends to contradict his assessment of his own impairment.

Degen's activities in the period after he quit working clearly and convincingly conflicted with his contention that his impairments, rather than his lifestyle choice caused him to quit his job.

The ALJ did not treat any of these factors discounting Degen's credibility as dispositive, but rather considered the full record in reaching his conclusion. In light of the totality of the infirmities just addressed, the ALJ found Degen's assertion of the severity of his symptoms was not fully credible, and could not overcome the objective evidence that he could continue to perform medium work. Taken together, and in light of the much milder objective medical evidence, the ALJ provided clear and convincing reasons for finding Degen's assessment of his own symptoms not entirely credible.

Degen then argues that the ALJ improperly ascribed "great evidentiary weight" to Treating Psychiatrist Frankel's assessment that his mental status was negative and showed improvement while rejecting Treating Psychiatrist Frankel's later medical impairment questionnaire in which she asserted Degen had severe mental impairment. The ALJ explained that Treating Psychiatrist Frankel's questionnaire responses were wholly conclusory and inconsistent with her own records and the rest of the medical record and appeared to have been prepared in connection with Degen's application for benefits (AR 28–29).

Degen contends the ALJ should have deferred to the conclusions of Examining Psychologist Franklin in assessing the opinion of Treating Psychiatrist Frankel, but the Franklin only examined Degen once, which the ALJ found also appeared to be in connection with Degen's application for benefits.

The ALJ's rejection of Treating Psychiatrist Frankel's and Examining Psychologist Franklin's unsupported, inconsistent, and claim-driven conclusions that Degen suffered from

10

disabling mental impairments was proper. Accordingly, the ALJ's assessment of Degen's residual functional capacity at step four and the subsequent decision that he was not disabled were supported by substantial evidence.

## CONCLUSION

To the extent stated above, plaintiff's motion for summary judgment is **DENIED**. and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: September 30, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE